1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT FOR THE

8              EASTERN DISTRICT OF CALIFORNIA

9

10   MICHAEL LOPEZ,                    )    CV F 05-0808 AWI SMS
                                       )
11           Plaintiff,                )
                                       )    ORDER ON DEFENDANTS'
12   v.                                )    MOTION FOR SUMMARY
                                       )    JUDGMENT
13   CINGULAR WIRELESS, LLC, a         )
     Delaware Corporation; TERRY HAUFF, )
14   and DOES 1 through 100, inclusive, )
                                       )    Document # 16
15           Defendants.               )
     ─────────────────────────────────)

16

17
         This is an action in diversity for general and punitive damages by plaintiff Michael Lopez
18
   ("Plaintiff") against defendants Cingular Wireless, LLC, ("Cingular" or "Defendant") and Terry
19
   Hauff ("Hauff"), an individual.[1]  Plaintiff's complaint alleges five claims for relief, each relating
20
   to what Plaintiff alleges was his unlawful termination from Cingular.  In the instant motion,
21
   defendant Cingular moves for summary judgment on each of Plaintiff's claims.  For the reasons
22
   that follow, Defendant's motion for summary judgment will be granted.
23
              PROCEDURAL HISTORY AND GENERAL FACTUAL BACKGROUND
24
         The complaint in this action was first filed in Merced County Superior Court on
25
   December 29, 2004.  Cingular removed the action to this court on June 20, 2005.  The complaint
26

27      [1]      Plaintiff concedes the claim against Hauff cannot be sustained.  Consequently the
   term "Defendant" hereinafter refers only to Cingular and does not include Hauff unless otherwise
28   noted.

alleges five claims for relief.  The first claim alleges discrimination on the basis of age against Cingular in violation of California Government Code, section 12941.  The second claim alleges discrimination based on national origin against Cingular in violation of California Government Code, section 12940.  The third and fourth claims for relief allege termination in violation of public policy under California common law for termination on the basis of age and national origin, respectively.  Plaintiff's fifth claim for relief alleges intentional infliction of emotional distress against Hauff.  Plaintiff's complaint also states a claim for punitive damages.

Defendants motion for summary judgment was filed on May 12, 2006.  Plaintiff's opposition was filed on June 16, 2006, following an order by the court permitting late filing of Plaintiff's opposition.  Defendants' reply was filed on June 23, 2006.  The matter was taken under submission as of June 23, 2006.

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are proffered by Defendant and are undisputed unless otherwise noted.  Proffered material facts that are not germane to the discussion that follows have been omitted.

Plaintiff was employed by Cingular  Wireless at its customer care call center located in Atwater, California.  From 2000 until he was terminated on December 29, 2003, plaintiff was an area manager at the Atwater call center.  During the entire time he was an area manager, plaintiff's direct supervisor was Ben Henderson.  As an area manager, plaintiff was responsible for supervising a team of managers.  One of the managers that reported to plaintiff was Cindy Browning. Jamie Davis was a customer care representative who reported to Cindy Browning.

Plaintiff contends that throughout Plaintiff's employment at the Atwater call center, Cingular Wireless had a Code of Business Conduct that contained a written policy that prohibited employees from accessing their own accounts, their co-workers' accounts, their family members' accounts or their friends' accounts.  Cingular Wireless' written

2

account access policy in effect at the time of plaintiff's termination required employees who needed assistance with their personal Cingular Wireless accounts to call into the center. Plaintiff disputes both proffered facts alleging the policy prohibited customer service employees, not first or second level managers, from accessing family accounts. Plaintiff received training annually on the Code of Business Conduct.

In October 2002, Ben Henderson was informed by Cindy Browning that plaintiff had approached Jamie Davis and asked her to access his wife's account. Mr. Henderson reported the incident to Terry Bridgman, a senior human resources manager at the Atwater call center. The parties differ sharply as to Defendant's contention that Ms. Bridgman conducted an investigation into the incident. Defendant contends there was a fair investigation that revealed that Plaintiff approached Davis on two occasions and that as a result of conversations that occurred between Plaintiff and Davis, Davis made changes in Plaintiff's wife's plan. Defendant also alleges that, as a result of conversations between Plaintiff and Davis, Davis backdated the changes and made favorable adjustments to Plaintiff's wife's bill. Davis alleges she would not normally have backdated the changes to Plaintiff's wife's plan, although other customer representatives may have done so. Davis, in a written statement, stated Plaintiff continued to stand by her desk and make her feel uncomfortable. Eventually, she back-dated the change in the plan which resulted in a credit to the account.

Plaintiff alleges the investigation occurred considerably after the fact and alleges that Davis later recanted allegations made in her written statement. The reason for the recantation or what factual allegations were affected is not known. Plaintiff alleges he told Browning to have the customer care representative do what was normal, customary and routine. Plaintiff denies asking Davis to credit his wife's account. Plaintiff alleges that Davis' statement does not say that Plaintiff asked her to credit Plaintiff's wife's account. Davis' statement reads: "I felt that he was indirectly asking for the credit without saying so, by closing me out and staying by my desk." Plaintiff denies that he stood by Davis' desk. Plaintiff alleges that a disagreement had arisen

3

1   between Davis and Plaintiff that may have motivated Davis to make false allegations against

2   Plaintiff.  Plaintiff also makes a number of allegations that, together, call into question the

3   fairness and thoroughness of Defendant's investigation of the incident.

4       Ms. Bridgman communicated her findings to Bob King, Regional Vice-President;

5   Theresa Kirk, Regional HR Director and Ms. Bridgman's supervisor; Ben Henderson; and

6   Maureen Sutton, a Cingular Wireless in-house attorney.  The group determined that

7   Ms. Bridgman's investigation and the statements made by plaintiff to Ms. Bridgman

8   confirmed that he had violated the account access policy contained in Cingular Wireless'

9   Code of Business Conduct, and that such conduct warranted termination.  On

10  December 29, 2003, plaintiff and  Ben Henderson met with plaintiff and informed him he

11  was being terminated.

12      Defendant alleges that in 2002, 11 employees were terminated at Cingular Wireless'

13  Atwater call center for violating the account access policy.  In 2003, 62 employees were

14  terminated at the Atwater call center.  In 2003, 22 call center employees were investigated

15  for potential account access policy violations.  In 12 instances the company determined

16  that a credit or some other feature had been applied which resulted in a negative financial

17  impact for the company.  In 11 of these 12 instances, the employees were terminated.

18  The 12th employee resigned before the investigation was concluded.

19      Plaintiff never told any of his supervisors or any of the members of the human

20  resources department that he believed he had been discriminated against on the basis of

21  his age.  Plaintiff was replaced by Deborah Lavender, who was 46 years of age at the time

22  Plaintiff was terminated.  Plaintiff was 49 years of age at the time of his termination and

23  had worked for Defendant for 19 years and 7 months.  Defendant alleges and plaintiff does not

24  dispute that Ben Henderson, plaintiff's supervisor, never made an comments to plaintiff

25  that led plaintiff to believe Henderson had a bias against people based upon their age.

26  Plaintiff does not believe that Bob King, Regional Vice-President, ever discriminated

27

28                                         4

against him because of his age, nor did he ever hear Bob King make any disparaging comments about older people.  Beyond the fact that Plaintiff was three to four years older than the person who replaced him, Plaintiff offers no facts to indicate he suffered age discrimination except that he states he was sometimes referred to as being "old school" or "dinosaur."  There is no indication that these statements or any similar statements are attributable to any person who was in a decision making position with regard to Plaintiff's termination.

With regard to Plaintiff's allegation of discrimination on the basis of national origin, Defendant alleges Plaintiff never heard any senior management at Cingular Wireless, including his supervisor, Ben Henderson, make disparaging remarks about Hispanics. Defendant also alleges Plaintiff does not believe that the individuals involved in the decision to terminate his employment, Bob King, Terry Bridgman, or Maureen Sutton, discriminated against him on the basis of his race.  Plaintiff disputes these facts based, it appears, on an e-mail that was apparently circulated in the company that contained a Hispanic joke and that apparently came through Henderson's computer.  Plaintiff does not know the origin of the joke or the specifics of it.

Plaintiff alleges he was discriminated against on the basis of his race because he was one of six Hispanic managers terminated during a 12-month period.  Plaintiff does not possess any evidence indicating that any of the other Hispanic managers' terminations were improper.  Nor does Plaintiff allege any facts with respect to the proportion of Hispanic personnel among the managerial staff or among the replacements for the six managers that were allegedly terminated.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

(9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th

Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial
> responsibility of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which
> it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When the moving party has the burden of

proof at trial, that party must carry its initial burden at summary judgment by presenting evidence

affirmatively showing, for all essential elements of its case, that no reasonable jury could find for

the non-moving party. <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th

Cir.1991) (en banc); <u>Calderone v. United States</u>, 799 F.2d 254, 259 (6th Cir. 1986); <u>see also</u>

<u>E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto</u>

<u>Rico</u>, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears

the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that

issue is conclusive.")

     If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.</u>

<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l Bank of Arizona v. Cities</u>

<u>Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los Angeles</u>, 607 F.2d 1276, 1280

(9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing

party may not rely upon the mere allegations or denials of its pleadings, but is required to tender

evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11;

<u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973). The

opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th

1   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

2   return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>Wool v. Tandem</u>

3   <u>Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

4           In the endeavor to establish the existence of a factual dispute, the opposing party need not

5   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7   trial." <u>First Nat'l Bank</u>, 391 U.S. at 290; <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose

8   of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

9   there is a genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

10  advisory committee's note on 1963 amendments); <u>International Union of Bricklayers v. Martin</u>

11  <u>Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

12          In resolving the summary judgment motion, the court examines the pleadings,

13  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

14  any.  Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th

15  Cir. 1982).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and

16  all reasonable inferences that may be drawn from the facts placed before the court must be drawn

17  in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>,

18  369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208

19  (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

20  party's obligation to produce a factual predicate from which the inference may be drawn.

21  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d

22  898, 902 (9th Cir. 1987).

23                                      **DISCUSSION**

24  **I. Plaintiff's Claim for Age-Based Discrimination**

25          "California has adopted the three-stage burden-shifting test established by the United

26  States Supreme Court for trying claims of discrimination, including age discrimination, based on

27

28                                            7

1   a theory of disparate treatment. [Citations.]" <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal.4th 317, 354

2   (2000).  The test is generally referred to as the "McDonnell Douglas test" from the Supreme

3   Court case <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 ()1973).  "The three stages are (1)

4   the plaintiff bears the initial burden of establishing a prima facie case of discrimination; (2) the

5   employer must then offer a legitimate nondiscriminatory reason for the adverse employment

6   decision; and (3) the plaintiff bears the burden of proving the employer's proffered reason was

7   pretextual." <u>Green v. Par Pools, Inc.</u>, 111 Cal.App.4th 620, 624 (4th Dist. 2003).  This test has

8   been applied in the context of a defendant's motion for summary judgment. <u>Id.</u>; <u>Slatkin v.</u>

9   <u>University of Redlands</u>, 88 Cal.App.4th 1147, 1156 (4th Dist. 2001).

10          The parties agree that to establish a prima facie case for age-based discrimination in

11   violation of California's Fair Employment and Housing Act ("FEHA"), the claimant must show

12   that : (1) he was 40 years of age or older; (2) an adverse employment action was taken against

13   him; (3) the claimant was performing his job in a satisfactory manner; and (4) the employee was

14   replaced by a significantly younger person.  <u>Marquez v. City of Emeryville</u>, 79 Cal.App.4th

15   1106, 1111 (1 Dist. 2000).  There is no dispute as to the Plaintiff's protected status as a person

16   more than 40 years of age.  There is also no dispute that he suffered an adverse employment

17   action.  There is also no evidence presented that Plaintiff was not performing his job

18   satisfactorily.  Thus, the sole contention of the parties with respect to Plaintiff's prima facie case

19   is whether Plaintiff was replaced by a person significantly younger than Plaintiff.

20          Defendants contend that the age differential between Plaintiff and the person who replaced

21   Plaintiff was not significant as a matter of law and that Plaintiff is therefore precluded from

22   establishing a prima facie case of age-based discrimination.  Plaintiff was 49 years of age at the

23   time of his termination.  Defendant alleges the person who replaced Plaintiff following his

24   termination was 46 years of age.  Thus, if Defendant's allegation is accepted, the age differential

25   at the time of Plaintiff's was not more than four years.

26          "Courts have differed about the exact gap in age that is significant for purposes of a

27

28                                                  8

1    discriminatory inference. [Citations.]" Guz 24 Cal.4th at 368.  The Supreme Court in Guz

2    summarized a number of cases which seem, together, to establish that a differential of five years is

3    a threshold of sorts.   In Guz, the California Supreme Court bypassed the issue of whether the

4    plaintiff had made a prima facie case, and instead assessed age differential as a factor giving

5    weight to the presumption of age discrimination in proportion the magnitude differential.  See id.

6    at 357, 368 (not resolving the issue of prima facie case, but assessing age differential in light of

7    other evidence of intent to discriminate on the basis of age).  In Douglas v. Anderson, 656 F.2d

8    528, 533 (9 Cir. 1981), the Ninth Circuit Court of Appeal noted that "[i]f the replacement is only

9    slightly younger than the plaintiff, then it is less likely that an inference of discrimination can be

10   drawn.  However, replacement by even an older employee will not necessarily foreclose prima

11   facie proof if other direct or circumstantial evidence supports an inference of discrimination."  Id.

12   In Douglas, the court held that the plaintiff satisfied his burden to establish the presumption of

13   discrimination based on the demonstration of an age differential of five years, being in a protected

14   class, being discharged, and substantial evidence of satisfactory job performance.  Id.

15         As an initial matter, the court notes that Plaintiff has objected to Defendant's proffer of

16   undisputed material fact as to the age of Plaintiff's replacement on the grounds of hearsay and

17   lack of foundation.  The court overrules Plaintiff's objection without prejudice.  The court notes

18   that Plaintiff bears the burden of establishing discriminatory intent.  See Guz, 24 Cal.4th at 356

19   (ultimate burden of persuasion as to actual discrimination remains with plaintiff).  In order to meet

20   that burden, Plaintiff's must offer competent evidence that the stated age differential is significant.

21   In the absence of any such proof, the court will not reject Defendant's evidence to the contrary.

22         Following Douglas, and taking note of the lack of any authoritative case law that sets a

23   definite lower boundary on the age differential that is required to support a prima facie proof of

24   discriminatory intent, the court determines the best approach is to adopt the approach taken by

25   Douglas.   The parties have submitted significant evidence on the issue of whether the non-

26   discriminatory reason proffered by Defendant was pretextual.  Given the small number of years

27

28                                              9

difference in the age of Plaintiff and the age of his replacement, and given the preliminary

showing by Plaintiff of the remainder of the factors set forth in Marquez, the court finds without

further analysis that Plaintiff is entitled to the weak presumption that Defendant acted with

discriminatory intent.  Following Douglas and Guz, the court will proceed to determine if the

evidence offered by Defendant in support of its proffer of non-discriminatory reason for Plaintiff's

termination is sufficient to overcome the weak presumption of age-based discrimination that

arises from the three to four year differential in age between Plaintiff and his replacement.

Plaintiff, having met his burden to demonstrate a prima facie case for discriminatory

motivation, shifts the burden to Defendant to show a non-discriminatory reason for Plaintiff's

termination.  Defendant offers as proof of non-discriminatory intent the allegation that Plaintiff

was terminated for violation of Plaintiff's "account access policy," which is apparently intended to

prevent employees who have access to computer programs that modify customer plans and

charges from self-dealing.  Defendants allege Plaintiff violated the policy by pressuring a

subordinate to make adjustments to his wife's cell phone plan and to adjust a bill retroactively.

Defendant alleges that in accordance with Defendant's code of business conduct, Plaintiff was

subject to termination for the violation of the customer access policy.

The court finds Defendant has proffered competent evidence sufficient to rebut the weak

presumption that Plaintiff's termination was motivated by discriminatory intent.  The policy

Defendant points to is a bona fide policy with a rational business purpose and its effect is

independent of the employee's age.  Further, Defendant has proffered competent evidence

sufficient to show that termination of employees who violate the customer access policy is not

inconsistent with Defendants' routine business practices.

Because Defendant has carried its burden to show a non-discriminatory reason behind the

adverse employment action against Plaintiff, the burden shifts back to Plaintiff to show that the

proffered reason is pretextual.  In this regard, Plaintiff makes two basic allegations, the details of

which are set forth in Plaintiff's statement of undisputed material facts.  First, Plaintiff alleges the

customer access policy was inappropriately applied to him.  Plaintiff alleges the first and second

level managers in the area where Plaintiff worked believed the customer access policy, as written,

applies to service representatives, not to first or second line managers.  Plaintiff further states

there was some confusion and/or difference of opinion among the first and second line managers

as to whether, or how the policy applied to them, if at all.  Second, Plaintiff disputes the factual

basis of his alleged interaction with the subordinate employee.  Plaintiff contends he only asked

the employee to do what normally be done on behalf of a customer.  Plaintiff alleges that the

supervisor investigating the alleged incident failed to make a thorough investigation, including

failing to inquire into the alleged fact that the subordinate employee had reportedly recanted her

initial report of the event.

Whether Defendant may have misapplied its own policy, or applied a flawed policy, or

applied policy unevenly; those facts, if shown, are not sufficient without more to satisfy Plaintiff's

burden to show discriminatory intent.  See Slatkin v. University of Redlands, 88 Cal.App.4th

1147, 1157 (4th Dist. 2001) (evidence a defendant lied about its reasons for dismissal do not,

without more, give rise to an inference of intentional discrimination).  It is also not sufficient to

show the decision was biased; the decision must be shown to be biased on grounds that are

prohibited by the statute.  Id.  The true reasons for a plaintiff's termination, "if nondiscriminatory,

[. . .] need not necessarily have been wise or correct."  Guz, 24 Cal.4th at 358.  "While the

objective soundness of an employer's proffered reasons supports their credibility [. . .], the

ultimate issue is simply whether the employer acted with a motive to discriminate illegally.

[Citations.]" Id.

Plaintiff has the burden to show not only that the reasons given by Defendant were

pretextual, but that the pretext masked a prohibited discriminatory intent.  This is where Plaintiff's

proffer of facts is ultimately unpersuasive.  Essentially, the thrust of Plaintiff's attempt to show an

underlying discriminatory intent is to demonstrate shortcomings in the investigation of the

incident and/or to call into question the factual basis for the application of the policy to Plaintiff.

1  What Plaintiff does not allege is any independent basis for a finding of discriminatory animus on

2  the part of the individuals that were responsible for Plaintiff's termination.[2]  Further, there is no

3  suggestion of any benefit that would accrue to Defendant from Plaintiff's dismissal and his

4  replacement by a person only three to four years his junior.  Indeed, there appears no independent

5  basis in the facts presented by Plaintiff that support a discriminatory basis for Plaintiff's

6  termination.

7         It is true that an employer's proffered reason for the adverse action may present

8  circumstantial evidence of discrimination if the proffered reason is found unworthy of credence

9  because it raises the suggestion the employer has reason to hide its true motivation.  Guz, 24

10 Cal.4th at 361.  Here, however, Plaintiff's disputations as to the facts of the case and the adequacy

11 of Defendant's investigation fail to demonstrate that Defendant's proffered reason for termination

12 is unworthy of credence.  Looking at the facts proffered by Plaintiff and looking at Plaintiff's

13 disputation of the facts proffered by Defendant in the light most favorable to Plaintiff, the most

14 that can be concluded is that reasonable minds might differ as to whether Defendant's termination

15 of Plaintiff was the result of careful investigation of the facts and fair and even application of

16 policy.  What remains lacking is any proffer by Plaintiff of facts, other than the circumstantial fact

17 that Plaintiff was three or four years older than his replacement, that Defendant was motivated by

18 unlawful discriminatory animus.  Plaintiff offers no factual basis upon which a finder of fact could

19 rationally conclude Plaintiff's termination was motivated by age-based discrimination.

20        "[A]n employer is entitled to summary judgment if, considering the employer's innocent

21 explanation for its actions, the evidence as a whole is insufficient to permit a rational inference

22 that the employer's actual motive was discriminatory."  Id. at 361.  Consequently, the court finds

23 Defendant is entitled to summary judgment as to Plaintiff's first claim for relief.

24

25        [2]     Plaintiff alleges in his declaration, that he was occasionally referred to as being
   "old school," apparently in reference to certain work attitudes or habits, or as a "dinosaur," a
26 reference that is not explained.  Plaintiff does not identify the individual or individuals who used
   those characterizations, nor does he allege that anyone with decision-making authority used such
27 references in regard to him.

28                                          12

**II. Plaintiff's Claim for Discrimination on the Basis of National Origin or Ancestry**

California Civil Code, section 12940 provides that an employer may not take an adverse action based on, among others, the national origin or ancestry of the employee. "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California's] own statutes." Guz 24 Cal.4th at 354. The parties agree that the legal framework set forth in McDonnell Douglas and applied in the context of a Federal Title VII action for discrimination based on national origin in Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9 Cir. 2004) is applicable in this case. Pursuant to Vasquez, the plaintiff in an action for discrimination based on national origin has the burden of establishing first a prima facie case. To establish a prima facie case, the plaintiff "must offer evidence that ' gives rise to an inference of unlawful discrimination,' either thought the framework set forth in [McDonnell Douglas] or with direct or circumstantial evidence of discriminatory intent." Vasquez, 349 f.3d at 640. Specifically, the McDonnell Douglas test, as applied to an action for discrimination based on national origin, requires that the plaintiff show that (1) he belongs to a protected class; (2) he was performing according to his employers legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with similar qualifications to his own were treated more favorably. Id. at 640 fn 5.

Here, direct evidence of discriminatory intent is almost entirely absent. The sole allegation the court can find that reflects direct evidence pointing to discriminatory intent is Plaintiff's allegation contained in his deposition that he received an e-mail message that contained a Hispanic-related joke. Plaintiff alleges only that the message indicated the joke had passed through Mr. Henderson's computer. Plaintiff denies any knowledge of where the message originated, who was the intended target of the message, or any specifics of what the message contained. There is no evidence Henderson endorsed the message or that he was involved in its propagation. The court finds the direct evidence offered by Plaintiff to support a contention of bias based on national origin is without weight or value in supporting that contention.

13

1    Direct evidence being absent, Plaintiff must carry his burden to show a presumption of

2    prohibited bias by adducing circumstantial evidence sufficient to satisfy the four-pronged test of

3    McDonnell Douglas.  Defendant does not dispute that Plaintiff is a member of a protected class,

4    that he suffered an adverse employment action, and that he generally had met the legitimate

5    performance expectations of the employer.  Defendant contends Plaintiff cannot make the

6    required showing that other employees with qualifications similar to his were treated more fairly.

7    Plaintiff alleges two basic facts to support his contention that other employees received

8    more favorable treatment.  First, he alleges the account access policy was misapplied in his case,

9    that the investigation was inadequate, and that the facts of the case are other than as stated by Ms.

10    Davis.  Second, Plaintiff alleges that in the 12 months prior to his termination, six first and second

11    level managers were terminated, and that five of the terminated managers were of Hispanic origin.

12    As discussed above, the fact that Plaintiff may have been terminated for violation of a

13    policy based on incomplete investigation of the facts and misapplication of the policy does not,

14    without more, establish prohibited intent.  Slatkin, 88 Cal.App.4th at 1157.  The court has found

15    that Plaintiff's allegations with respect to Defendant's conduct of the investigation and application

16    of the account access policy raises, at most, the inference that there may be differences of opinion

17    as to the applicability of the policy to those managers.  The court's prior finding that Plaintiff's

18    allegations with regard to the application or investigation of the account access policy does not

19    give rise to an inference of prohibited motivation applies equally in the context of Plaintiff's

20    allegation of bias based on national origin as it did in the context of age-based bias.

21    As to Plaintiff's allegation that five of the six manager who were terminated in the prior

22    12-month period were Hispanic, Defendant contends that Plaintiff cannot establish a prima facie

23    case of discrimination because the statistical sample upon which Plaintiff bases his claim of proof

24    of a pattern of discrimination is too small.  The court agrees that Plaintiff's proffer of evidence of

25    a pattern of discriminatory intent is insufficient, not necessarily because it is too small, but

26    because it is incomplete.  By itself, the fact that five out of the six terminated managers were

27

28                                                           14

1   Hispanic is meaningless.  What proportion of the managers in the organization are Hispanic?

2   Were some or any of the employees who replaced the terminated managers Hispanic?  If so, how

3   many?  Were the Hispanic managers terminated for non-discriminatory reasons?

4          The burden Plaintiff must meet to show a prima facie case of discrimination is to adduce

5   facts sufficient to show that employees similarly situated to Plaintiff, but not in Plaintiff's

6   protected class received treatment that was more favorable than employees in the protected class.

7   The proffer of a single fact, that by itself merely suggests the possibility of discriminatory intent

8   depending on the state of other non-alleged facts, is not sufficient to raise the presumption of

9   discriminatory intent.  The court finds Plaintiff has failed to carry his burden to adduce facts

10  sufficient to support a prima facie case of discrimination based on national origin.

11         Even if the court were to find Plaintiff has submitted facts sufficient to raise a presumption

12  of discrimination based on national origin, Defendant has rebutted that presumption by offering

13  evidence that Plaintiff's termination was for a lawful, non-discriminatory reason.  As discussed

14  above, Defendant's allegation that Plaintiff was terminated for violation of the customer access

15  policy is supported by a proffer of competent evidence and posits a reason for Plaintiff's

16  termination that is non-discriminatory with respect to both age and national origin.  Under

17  McDonnell Douglas and Vasquez, the Defendant, having presented evidence sufficient to rebut a

18  presumption of discrimination, shifts the burden of production back to Plaintiff to show that the

19  non-discriminatory reason offered by Defendant is pretextual.  Vasquez, 349 F.3d at 640.

20         As discussed above, Plaintiff's contention that the investigation into the allegation he

21  violated the customer access policy was insufficient or that the policy was misapplied as to him

22  fails to establish pretext.  It is not enough to show Defendant was incompetent or unfair.  In the

23  face of Defendant's proffer of a race-neutral, non- discriminatory reason for the adverse action,

24  Plaintiff has the burden to offer substantial proof that any incompetence or unfairness was the

25  result of discriminatory motivation.  Likewise, the fact that five out of six managers terminated in

26  the year prior to Plaintiffs termination were Hispanic fails to establish either pretext or

27

28                                                  15

1  discriminatory intent because no evidence is presented that the Hispanic managers were

2  terminated for violation of the customer access policy while other, non-Hispanic, managers who

3  violated the policy were not terminated or treated more favorably.  See id. at 641 fn 13 (evidence

4  non-class members were treated more favorably probative of pretext).

5       Because Plaintiff has failed to carry his burden of proof under McDonnell Douglas and

6  Vasquez, to show there is a triable issue of material fact as to the issue of whether Plaintiff was

7  terminated as a result of unlawful discrimination, summary judgment in favor of Defendant is

8  warranted on Plaintiff's second claim for relief.

9  **III.  Plaintiff's Third and Fourth Claims for Relief for Termination Against Public Policy**

10      "In California, at will employees may bring a tort action for wrongful termination if their

11  employer discharges them for a reason that violates fundamental public policy."  Nelson v. United

12  Technologies, 74 Cal.App.4th 597, 608 (6th Dist. 1999).  A public policy satisfying the

13  requirements of this tort "must be (1) supported by either statutory or constitutional provisions;

14  (2) public, in the same sense that the policy 'inures to the benefit of the public' rather than serving

15  merely the individual's interests; (3) have been articulated at the time of the discharge; and (4) be

16  substantial and fundamental. [Citation]" Id. 608-609 (citing Gant v. Sentry Ins., 1 Cal.4th 1083,

17  1095 (1992).  Courts have found employment termination in violation of FEHA, particularly

18  termination for age-based and race-based bias satisfies the elements of termination in violation of

19  public policy under California law.  Because termination resulting from age or race-based

20  discrimination is the predicate for the tort of termination in violation of public policy, it follows

21  that the legal standard for the tort of termination in violation of public policy is identical to the

22  legal standard for age or race-based discrimination in violation of FEHA.  Nelson, 74 Cal.App.4th

23  at 613 fn 4.

24      Because Plaintiff has failed to rebut Defendant's proffer of proof of non-discriminatory

25  termination, both with respect to Plaintiff's claims of age-based and race-based discrimination,

26  Plaintiff has failed to establish the necessary predicate violations of the underlying FEHA claims.

27

28                                          16

Because Plaintiff cannot sustain his claims for relief under FEHA, it follows that Defendant is entitled to summary judgment with respect to Plaintiffs claims for termination in violation of public policy.

**III.  Punitive Damages**

Punitive damages are appropriate under California law where the claimant can demonstrate oppression, fraud or malice.  California Civil Code, section 3294. Plaintiff concedes he will not be able to meet the elevated burden of proof with regard to punitive damages. Defendant is therefore entitled to summary judgment as to Plaintiff's claim for punitive damages.

**IV.  Plaintiff's Claim Against Hauff and Cingular for Intentional Infliction of Emotional Distress**

According to Defendant's summary of proceedings in the Superior Court of Merced County prior to the removal of the case to this court, Cingular and individual defendant Terry Hauff successfully demurred to Plaintiff's claim for intentional infliction of emotional distress. Terry Hauff later became Terry Bridgman.  The superior court entered judgment in favor of individual defendant Hauff/Bridgman.  The court takes judicial notice of the superior court's grant of demurrer and of the entry of judgment in favor of Hauff/Bridgman.  Based on the exhibits judicially noticed and on the fact neither of the parties addresses Plaintiff's claim for relief based on intentional infliction of emotional distress, the court concludes that claim has been settled and is not before the court.

Therefore, in accordance with the foregoing discussion, it is hereby ORDERED that Defendant's motion for summary judgment is hereby GRANTED as to each of Plaintiff's remaining claims for relief.  The Clerk of the Court shall enter judgment in favor of Defendants and shall CLOSE the CASE.

IT IS SO ORDERED.

**Dated:   August 28, 2006**                    _____/s/ Anthony W. Ishii_____
0m8i78                                                    UNITED STATES DISTRICT JUDGE

17